UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-10587-GAO

CHRISTOPHER CUTTS,
Plaintiff,

v.

KATHLEEN DENNEHY, et al.,
Defendants.

ORDER
March 31, 2010

O'TOOLE, D.J

The magistrate judge to whom the matter was referred has filed a Report and Recommendation on Defendants' Motion for Summary Judgment, in which she recommends that the motion be granted as to claims against the defendants Kathleen M. Dennehy, Lois Russo, and "Williams,"[1] but denied as to the claims against the defendants Greg Jones and Daniel Malboeulf. No objection to the magistrate judge's recommendation has been received, and the time for filing such objections has passed.

After review of the relevant pleadings and papers, I ADOPT the Report and Recommendation without change. The defendants' motion for summary judgment (dkt. no. 42) is GRANTED as to claims asserted by the plaintiff against defendants Dennehy, Russo, and Williams, but DENIED as to claims asserted against defendants JONES and MALBOEULF.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

[1] No first name is given for defendant Williams.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTOPHER CUTTS,    )
                      )
         Plaintiff,    )       CIVIL ACTION
     v.                  )       NO. 07-10587-GAO
                      )
KATHLEEN DENNEHY, et al.,  )
                      )
        Defendants.    )

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

March 15, 2010

DEIN, U.S.M.J.

## I. INTRODUCTION

This action arises out of an October 24, 2004 incident involving a physical altercation between the plaintiff, Christopher Cutts ("Cutts"), and two correctional officers at the Souza-Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts, Greg Jones ("Jones") and Daniel Malboeuf ("Malboeuf"). By his Verified Civil Rights Complaint, Cutts has asserted claims against Jones and Malboeuf for use of excessive force in violation of his Eighth Amendment rights and for assault and battery, negligence and intentional infliction of emotional distress. (Compl. (Docket No. 1) at Counts One & Two). He has also brought claims against the former Commissioner of Correction, Kathleen M. Dennehy ("Dennehy"); the former Superintendent at SBCC,

Lois Russo ("Russo"); and the former Director of Security at SBCC, Williams[1] ("Williams"), alleging that they were grossly negligent in failing to take affirmative actions to protect the plaintiff from harm, and that they should be held liable under a theory of respondeat superior. (Compl. at Counts Three & Four).[2] The District Court dismissed Cutts' claims for respondeat superior on April 24, 2007. (See Docket No. 5 at 1, 9). Therefore, as to Dennehy, Russo and Williams, only his gross negligence claim remains. In response to Cutts' claims, defendants Jones and Malboeuf have asserted counterclaims against Cutts for assault and battery. (See Docket No. 21).

Presently before the court is the defendants' "Motion for Summary Judgment" (Docket No. 42). By their motion, the defendants contend that there are no disputed issues of fact and that they are entitled to judgment as a matter of law with respect to all of Cutts' remaining claims. As detailed below, this court finds that based on the record submitted on summary judgment, there are disputed issues of fact as to whether, in connection with their physical altercation with the plaintiff, Jones and Malboeuf maliciously used unnecessary force in order to cause the plaintiff harm. Therefore, and for the reasons that follow, this court concludes that Cutts' claims against those defendants must proceed to trial. However, this court also finds that because there is no

---

[1] Neither the complaint nor the materials submitted on summary judgment disclose Williams' full name.

[2] In his complaint, Cutts also named the Massachusetts Department of Correction ("DOC") as a defendant. However, on April 24, 2007, the District Court dismissed the plaintiff's claims against the DOC and terminated the DOC as a defendant in this action. (See Docket No. 5 at 1, 7-9).

evidence indicating that defendants Dennehy, Russo or Williams had any involvement in the alleged incident, were aware of any unsafe conditions that would have alerted them to the possibility of harm to the plaintiff, or otherwise acted with recklessness or callous indifference to the plaintiff's rights, those defendants are entitled to judgment as a matter of law. Accordingly, this court recommends to the District Judge to whom this case is assigned that the defendants' motion for summary judgment be ALLOWED IN PART and DENIED IN PART. Specifically, this court recommends that the motion be allowed with respect to Dennehey, Russo and Williams, but denied with respect to Jones and Malboeuf.

## II. STATEMENT OF FACTS[3]

The following facts relevant to the defendants' motion are undisputed unless otherwise indicated.[4]

---

[3] The facts are derived from (1) the Affidavit of Daniel Malboeuf ("Malboeuf Aff.") (Docket No. 43-4); (2) excerpts from Cutts' deposition ("Cutts Dep.") (Docket No. 43-5); (3) the Affidavit of Lois Russo ("Russo Aff.") (Docket No. 46); the Affidavit of Gregory Jones ("Jones Aff.") (Docket No. 47); and the Affidavit of Counsel ("Counsel Aff.") attached to the Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Docket No. 48). In addition, the court has considered a surveillance tape of the October 24, 2004 incident, which is labeled "Staff Assault (L2)." Neither party has filed a concise statement of material facts pursuant to Local Rule 56.1. Although this court has elected to evaluate the defendants' motion for summary judgment based on the facts presented in the affidavits and other materials filed with the court, the defendants are cautioned that the failure to include a statement of material facts may constitute grounds for denying a motion for summary judgment. See L.R. 56.1. See also Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994) ("district courts are entitled to demand adherence to specific mandates contained in the [local] rules").

[4] In his memorandum in opposition to the motion for summary judgment, the plaintiff states that he "vigorously disputes" the factual accounts set forth in the affidavits submitted by the

### Events Leading Up to the Alleged Physical Altercation

This action arises as a result of events that occurred at SBCC on October 24, 2004.

At that time, Cutts was an inmate at SBCC, where he was serving a natural life sentence

plus 20 years for first degree murder. (Cutts Dep. at 9).

The record reveals that sometime during the mid-morning of October 24, 2004,

Cutts approached Jones and Malboeuf at the officers' station and asked if they had any

toilet paper. (Russo Aff., Ex. B at 67-68). Jones replied that toilet paper is issued on

Mondays and that the officers had no toilet paper available. (Id.). Although Cutts left the

officers' station, he returned about a half hour later and repeated his request for toilet

paper. (Id.). Again, Jones told Cutts that the officers had no toilet paper, and that they

only had half a roll for themselves. (Id.). According to the officers, Cutts asked if he

could have their toilet paper, and they refused. (Id.). Cutts then proceeded to walk away.

(Id.).

Later that morning, Jones and Malboeuf were approached by another inmate, who

requested toilet paper on behalf of Cutts. (Id.). Jones told the inmate of his prior

discussion with Cutts in which he informed Cutts that no toilet paper was available. (Id.).

---

defendants in support of their motion. (Pl. Opp. (Docket No. 45) at 3). This argument is insufficient to create a genuine issue of disputed fact. In order to avoid summary judgment, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1ᵗ Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). In the instant case, the plaintiff has not submitted any evidence to dispute the facts contained in the affidavits or other materials submitted by the defendants. Accordingly, the facts are based solely on the defendants' evidence.

However, Jones provided the inmate with some paper towel so that Cutts would have something to use until Monday, when he would receive more toilet paper. (Id.). The inmate delivered the paper towel to Cutts, who was locked in at the time. (Id.).

### The Physical Altercation

Subsequently, on the afternoon of October 24, 2004, Cutts approached the officers' station once again, dropped the paper towels and proceeded to enter the staff bathroom.[5] (Id.; Jones Aff. ¶ 2). The staff bathroom is considered "out of bounds" to all inmates and Cutts did not have permission to go in there. (Russo Aff., Ex. B at 69; Jones Aff. ¶ 2). According to Cutts, his reason for entering the staff bathroom was to retrieve some toilet paper. (Cutts Dep. at 60).

The parties have very different accounts of what happened next. According to Cutts, Jones followed him into the bathroom, came up from behind and slammed Cutts' head into the back wall. (Id. at 60-62). The plaintiff further claims that as he turned to face Jones, the defendant began punching him in a violent manner, on the right side of his head, just above his eye. (Id.). Cutts believes that Jones punched him between three and four times, and possibly five times, while the parties remained in the bathroom. (Id.). Thereafter, Cutts was able to face Jones and "bulldog" him out of the bathroom by putting his hands on the sides of Jones' chest and pushing him backward out the

---

[5] The surveillance videotape indicates that the incident at issue in this case took place just after 2:30 p.m. on October 24, 2004. It also shows that the staff bathroom was located behind the officers' station.

bathroom door. (Id. at 61-63). The plaintiff estimates that only about five seconds

elapsed between the time he entered the bathroom and the time he was able to get out.

(Id. at 63).

Cutts claims that once outside the bathroom, Jones continued to throw punches at

his head. (Id. at 64-65). He also contends that he defended himself by throwing punches

back at Jones. (Id. at 64). Cutts admits that he directed his punches toward the

defendant's head. (Id. at 65). According to Cutts, he may have thrown as many as five

punches at Jones. (Id. at 64-65). Cutts later learned that at least one of his punches hit

Jones in his front teeth. (Id. at 69).

Cutts contends that while he was engaged in the physical altercation with Jones,

Malboeuf approached his left side and joined Jones "in punching my head in." (Id. at

64-65). According to Cutts, after Malboeuf had hit him three times, Jones tackled him

around his neck, both officers jumped on him, and everyone hit the ground. (Id. at 66).

At that point, Cutts felt his shoulder pop. (Id.). Thereafter, an emergency response team

arrived at the scene. (Id.). Cutts claims that he was able to slide out from underneath the

officers and back away. (Id.).

The officers' version of events varies markedly from Cutts' description of the

incident. According to the defendants, after Cutts entered the staff bathroom, Jones went

to the bathroom door, stepped inside and ordered the plaintiff to get out. (Russo Aff., Ex.

B at 67-68; Jones Aff. ¶ 3; Malboeuf Aff. ¶ 3). They claim that Cutts responded by

punching Jones in the face with closed fists and driving him backward out of the

bathroom. (Russo Aff., Ex. B at 67-68; Jones Aff. ¶ 4; Malboeuf Aff. ¶ 3). Jones further

contends that the parties were together in the bathroom for only three seconds, and that he

did not strike the plaintiff during that time. (Jones Aff. ¶ 7). Although he did wrestle

with Cutts after the parties were outside the bathroom, Jones asserts that the plaintiff

continued to throw punches at him and that he had to use force in order to defend himself

and attempt to gain control of the plaintiff. (Id. ¶ 9; Russo Aff., Ex. B at 68).

Malboeuf alleges that once he witnessed Cutts punch Jones, he implemented an

emergency response by calling in a "staff assault." (Russo Aff., Ex. B at 67-68;

Malboeuf Aff. ¶ 3). He then proceeded to assist Jones in an effort to restrain the plaintiff.

(Russo Aff., Ex. B at 67-68; Malboeuf Aff. ¶ 3). Like Jones, Malboeuf alleges that any

force he used was in self-defense and in furtherance of his efforts to control the plaintiff.

(Malboeuf Aff. ¶ 5). According to both officers, Cutts' resistance to their attempts to

restrain him caused the parties to end up on the ground. (Id.; Jones Aff. ¶ 9). Jones

claims that they were unable to subdue Cutts until the response team arrived. (See Russo

Aff., Ex. B. at 68).

### The Surveillance Videotape

The October 24, 2004 incident was captured on a surveillance videotape. The

defendants have filed a copy of the videotape with the court and the parties agree that the

court may rely on the tape in addition to the documentary materials that have been filed

in connection with the pending motion. The videotape shows Cutts approaching the

officers' station at 2:36:15 p.m. on October 24, 2004.[6] The two officers whom the parties have identified as Jones and Malboeuf are located behind the desk at the station. It is not clear to this court whether Cutts is carrying anything or whether, when he reaches the officers' station, he drops anything on the desk. In any event, the videotape shows Cutts walking past the station and opening the door to the bathroom located behind the station at 2:36:20 p.m. One second later, Cutts is inside the bathroom and is no longer in view. Jones gets up and follows him into the bathroom.

As Jones enters the bathroom after Cutts, the door begins to close behind Jones. However, the door does not close completely, and it is possible to see Jones' figure standing just inside the bathroom door. Although Jones continues to remain visible, this court cannot discern what if anything takes place during the few seconds in which Cutts and Jones are together in the bathroom. In particular, although both Cutts and Jones assert that an altercation did take place in the bathroom, from this court's viewing it is not possible to confirm that punches were thrown, much less who threw them.

The videotape does not clearly depict the parties emerging from the bathroom, and this court is unable to determine whether punches were being thrown at the moment they exited the bathroom or who pushed whom out of the bathroom. It does show that by 2:36:25 p.m., about four seconds from the time when Cutts first entered the bathroom, Jones and Cutts are standing outside the bathroom facing each other, and appear to be

---

[6] The surveillance videotape does not contain any sound.

engaged in a struggle.  At 2:36:29 p.m., Jones appears to be on the ground and Cutts appears to be on his knees, leaning over the defendant.  One second later, Cutts gets to his feet and begins to move away from Jones.  Nevertheless, Cutts is still leaning over toward Jones, and his arm is extended toward Jones.  Jones remains on the ground.

At 2:36:31 p.m., it appears that Jones is attempting to stand up.  Cutts is leaning over Jones with his legs spread.  Once Jones is on his feet, the parties continue to engage in a physical altercation.  At one point, it appears that Cutts has pushed Jones against the wall.  Almost immediately thereafter, at about 2:36:34 p.m., Malboeuf enters the scuffle. At this time, Cutts' head is visible on the videotape, and there is no indication that Malboeuf is punching his head.  At 2:36:37 p.m., both officers are standing with their arms on Cutts and seem to be gaining control.  However, Cutts' subsequent movements are consistent with an effort to resist the officers' use of force, and by 2:36:42 p.m., all three men are on the floor.

The videotape shows two additional officers arriving at the scene a couple moments later.  Cutts and the two defendants are still on the floor, but all three begin to get up as soon as the response team arrives.  At 2:36:45 p.m., everyone is on his feet, and Cutts is moving away from the officers.  Shortly thereafter, Cutts is surrounded by correctional officers, placed in handcuffs and led away.

## Events Following the Alleged Altercation

After the incident was over, Cutts was taken to the health services unit where he was examined by a nurse for purposes of clearing him to segregation. (Cutts Dep. at 69; Incident Rep. attached to Counsel Aff.). The nurse determined that Cutts had multiple superficial lacerations to the knuckles of his right hand. (Incident Rep. attached to Counsel Aff.). However, the plaintiff denied that he had any other medical complaints or that he had any thoughts of hurting himself or others. (Id.). Accordingly, Cutts was cleared for segregation and was placed in the SBCC's Special Management Unit. (Id.; Russo Aff., Ex. B at 67).[7]

Jones and Malboeuf also received medical attention following the altercation with Cutts. (Cutts Dep. at 69). The record indicates that Jones received two sutures on his upper lip, and that Malboeuf sustained an injury to his left shoulder rotator cuff. (Russo Aff., Ex. B at 69). As a result of their injuries, each of the officers filed an industrial accident claim and spent time out of work. (Id.).

On October 26, 2004, Cutts sent a letter to defendant Dennehy in which he alleged that Jones and Malboeuf had wrongfully attacked and assaulted him. (See Russo Aff., Ex. B at 66, 75). The letter was forwarded to the DOC's Office of Investigative Services, which initiated an investigation into Cutts' allegations. (See id. at 66, 72-75). The

---

[7] The plaintiff argues that he sustained injuries as a result of the incident that were inadequately treated and ultimately resulted in surgery. (Pl. Opp. at 2). However, there is no evidence in the record which supports this argument.

-10-

investigation was performed on November 17, 2004 by Correction Officer Luis Melendez. (Id. at 66). In connection with the investigation, Officer Melendez reviewed the relevant documentation and videotapes, and conducted interviews with Jones and Malboeuf. (Id. at 66-68). Officer Melendez also interviewed Unit Team Sergeant John Flowers regarding the procedures for distributing toilet paper to inmates at SBCC. (Id. at 68). According to the investigation report, Officer Melendez and other employees of SBCC attempted to interview Cutts on two separate occasions. (Id. at 67). However, Cutts was unwilling to discuss the matter without his attorney present. (Id.).

The investigation report demonstrates that Officer Melendez credited the defendants' version of events. Thus, Officer Melendez determined, among other things, that Cutts had refused direct orders to exit the staff bathroom, that the plaintiff had physically assaulted defendant Jones, and that both Jones and Malboeuf had sustained injuries as a result of the incident. (Id. at 69). He also concluded that Cutts' allegations of assault by Jones and Malboeuf were unfounded. (Id. at 70).

Additional factual details relevant to this court's analysis are set forth below.

## III. ANALYSIS

### A. Summary Judgment Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable

jury could resolve the point in the favor of the non-moving party." <u>Sanchez v.</u>

<u>Alvarado,</u> 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted). A material

fact is one which has "the potential to affect the outcome of the suit under the applicable

law." <u>Id.</u> (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine

issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 323, 106 S. Ct.

2548, 2553, 91 L. Ed. 2d 265 (1986). If that burden is met, the opposing party can avoid

summary judgment only by providing properly supported evidence of disputed material

facts that would require trial. <u>See id.</u> at 324, 106 S. Ct. at 2553. "[T]he nonmoving party

'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific

facts showing that there is a genuine issue for trial. <u>LeBlanc v. Great Am. Ins.Co.,</u> 6 F.3d

836, 841 (1st Cir. 1993) (quoting <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 256, 106

S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). The court must view the record in the light

most favorable to the non-moving party and indulge all reasonable inferences in that

party's favor. <u>See</u> <u>O'Connor v. Steeves,</u> 994 F.2d 905, 907 (1st Cir. 1993). "If, after

viewing the record in the non-moving party's favor, the Court determines that no genuine

issue of material fact exists and the moving party is entitled to judgment as a matter of

law, summary judgment is appropriate." <u>Walsh v. Town of Lakeville,</u> 431 F. Supp. 2d

134, 143 (D. Mass. 2006).

**B.**   <u>**Claims Against Dennehy, Russo and Williams**</u>

The defendants contend, as an initial matter, that Cutts has failed to present any support for his claims against Dennehy, Russo and Williams, and that they are entitled to judgment as a matter of law. This court agrees. In his complaint, the plaintiff alleges that Dennehy, Russo and Williams are liable for the harm suffered by the plaintiff as a result of their "gross negligence." In particular, he alleges that "[i]n spite of a rash of prisoner assaults by staff at the prison, some of which notably featured on Fox 25 News, no steps were taken to curb the culture of violence which existed among prison guards." (Compl. at Count Three). The District Court allowed this claim to proceed against Dennehy, Russo and Williams for direct, personal liability based on a theory that they "knew or should have known of the unsafe conditions at SBCC and that they were 'grossly negligent' in failing to take affirmative actions to prevent danger to the Plaintiff." (Docket No. 5 at 10). As the District Court stated, "[t]his turns on whether Plaintiff has set forth that these Defendants' actions were reckless or callously indifferent to his rights." (<u>Id.</u>). Because this court finds that there is no evidence that Dennehy, Russo or Williams were aware or should have been aware of any dangerous conditions at SBCC, or that they acted recklessly or with callous indifference to the plaintiff's rights, this court recommends that the motion for summary judgment against these defendants be allowed.

Under 42 U.S.C. § 1983,[8] supervisory officials such as Dennehy, Russo and Williams "incur no *respondeat superior* liability for the actions of their subordinates." Hegarty v. Somerset County, 53 F.3d 1367, 1379 (1st Cir. 1995). Where, as here, such officials did not participate in the challenged conduct, they can be held liable "only if '(1) the behavior of [their] subordinates results in a constitutional violation, and (2) the [supervisor's] action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.'" Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (quoting Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1988)). In other words, "a supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others. An official displays such reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994) (citations and footnote omitted).

In the instant case, Cutts does not allege, and there is no evidence to conclude, that Dennehy, Russo or Williams knew about the incident between the plaintiff and the defendant correctional officers, or that they encouraged, condoned or acquiesced in the

---

[8] Cutts agrees that his claims against Dennehy, Russo and Williams arise under 42 U.S.C. § 1983. (See Pl. Opp. at 4 (agreeing that legal standard to be applied to claims against Dennehy, Russo and Williams is the standard applied to claims arising under Section 1983)). Therefore, this court declines to address the defendants' argument that Cutts cannot maintain a negligence claim against them under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258. (See Def. Mem. (Docket No. 43) at 4).

officers' behavior.  Nevertheless, "a causal link may also be forged if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations. When the supervisor is on notice and fails to take corrective action, say, by better training or closer oversight, liability may attach."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).

Here, Cutts alleges that there was a "culture of violence" consisting of a pattern or custom of staff assaults on prisoners at SBCC.  However, there is nothing in the record to support such a claim.  Significantly, Cutts has presented no evidence indicating that there were prior instances of staff misconduct or a pattern of assaults on inmates at SBCC.  In fact, according to Russo, there was no such culture of violence at SBCC during the time period when he was Superintendent at the facility, including at the time of the alleged incident on October 24, 2004.  (Russo Aff. ¶ 4).  Moreover, "isolated instances of unconstitutional activity ordinarily are insufficient to establish a . . . policy or custom, or otherwise to show deliberate indifference."  Maldonado-Denis, 23 F.3d at 582.  Thus, the circumstances surrounding the October 24, 2004 incident, without more, are insufficient to support an inference that a culture of violence existed at SBCC.

Cutts does not dispute that the record is void of any evidence to support the existence of a "culture of violence" at SBCC, or to demonstrate that the defendants failed to take affirmative steps to prevent harm to the plaintiff.  (See Pl. Opp. at 4).  However, he argues that "[a] reasonable fact finder could find that [the supervisory defendants] acquiesced to the actions of Jones and Malbeouf (sic) by failing to properly investigate

-15-

the incident, and by failing to ensure that Cutts was cared for after the events of October 24, 200[4]." (Id.). This argument is insufficient to avoid summary judgment. As an initial matter, Cutts' complaint does not include a claim against Dennehy, Russo or Williams for failure to conduct an adequate investigation or to provide medical care. Furthermore, there is nothing in the record that would support such a claim.

The evidence indicates that after the incident involving Jones and Malboeuf, Cutts received a medical examination by a nurse at SBCC. (Incident Rep. attached to Counsel Aff.). During the examination, the nurse found superficial lacerations to the knuckles of Cutts' right hand. (Id.). However, Cutts denied that he had any other medical complaints, and there is no evidence in the record to suggest otherwise. (Id.). Accordingly, the facts presented on summary judgment belie Cutts' suggestion that he received no care following the events of October 24, 2005. Additionally, there is nothing in the record to suggest that Dennehy, Russo or Williams interfered with Cutts' medical treatment or took any actions to prevent him from receiving adequate medical care. Accordingly, there is no support for any claim that these defendants acted improperly with respect to Cutts' care.

Additionally, it is undisputed that an investigation took place following the altercation, but there is no evidence in the record to indicate that Dennehy, Russo or Williams participated in any way. Moreover, even assuming that the investigation was inadequate and Dennehy, Russo and Williams were involved in the investigation, Cutts has not explained how any such actions constituted supervisory encouragement with respect to

-16-

the alleged incident or caused the plaintiff to suffer harm. Therefore, this court

recommends that the defendants' motion for summary judgment be allowed with respect

to Dennehy, Russo and Williams.

C.    **Claims Against Jones and Malboeuf**

The defendants argue that they are entitled to summary judgment with respect to

Cutts' claims against Jones and Malboeuf for excessive force, as well as on his claims

against them for assault and battery, negligence and intentional infliction of emotional

distress, based on the objective depiction of the incident set forth in the surveillance

videotape. Specifically, the defendants contend that

> no reasonable inference could be drawn, based upon a review of this
> surveillance tape, that defendants were the aggressors, that they were
> not acting in self-defense or . . . consistent with their right to use
> force under the use of force regulation, and that until additional staff
> arrived, plaintiff made no attempt to retreat.

(Def. Mem. (Docket No. 43) at 6).[9]  This court finds that when the surveillance videotape

and the other evidence in the record is viewed in the light most favorable to Cutts, there is

a question of fact as to whether the defendant correctional officers were acting consistent

with their right to use reasonable force or whether they applied unnecessary force for the

purpose of causing harm to the plaintiff.  Accordingly, the defendants have not

---

[9]  The defendants make no distinction between Jones' and Malboeuf's claims for summary
judgment.  After viewing the tape, this court concludes that a jury should determine what
occurred between the parties.

demonstrated that the evidence disclosed by the surveillance videotape warrants a

judgment for Jones and Malboeuf as a matter of law.

### Claims for Excessive Force and Assault and Battery

Cutts' principal claims against Jones and Malboeuf are that they subjected him to

cruel and unusual punishment in violation of his Eighth Amendment rights, and

committed an assault and battery against him through their use of excessive force.  It is

well-settled that "the unnecessary and wanton infliction of pain . . . constitutes cruel and

unusual punishment forbidden by the Eighth Amendment."  Hudson v. McMillian, 503

U.S. 1, 5, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992) (quotations and citations

omitted; punctuation in original).  Where, as here, "prison officials stand accused of using

excessive physical force in violation of the Cruel and Unusual Punishments Clause, the

core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm."  Id. at 6-7, 112 S. Ct. at

999.  Among the factors to be considered in determining whether the use of force was

wanton and unnecessary, are "the extent of injury suffered by [the] inmate[,]" "the need

for application of force, the relationship between that need and the amount of force used,

the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to

temper the severity of a forceful response.'"  Id. at 7, 112 S. Ct. at 999 (quoting Whitley

v. Albers, 475 U.S. 312, 321, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986)).

"Under Massachusetts law, assault and battery may be proven using two alternate

theories.  Under the first, an assault and battery is 'the intentional and unjustified use of

force upon the person of another, however slight.'" <u>Thore v. Howe</u>, 466 F.3d 173, 175-76 (1st Cir. 2006) (quoting <u>Commonwealth v. Burno</u>, 396 Mass. 622, 625, 487 N.E.2d 1366, 1368-69 (1986)) (additional citation omitted). "Under the second theory, assault and battery is the 'intentional commission of a wanton or reckless act (something more than gross negligence) causing physical or bodily injury to another.'" <u>Id.</u> at 176 (quoting <u>Burno</u>, 396 Mass. at 625, 487 N.E.2d at 1369). Thus, a corrections officer "can be liable for committing an assault and battery if [he] use[s] excessive force . . . in subduing a prisoner . . . ." <u>Evicci v. Baker</u>, 190 F. Supp. 2d 233, 239 (D. Mass. 2002).

The defendants argue that it is plain from the surveillance videotape that Cutts was the aggressor coming out of the bathroom and that he continued to attack the defendants until other corrections officers arrived at the scene. (<u>See</u> Def. Mem. at 9-10). They further contend that this evidence establishes conclusively that the force used by Jones and Malboeuf remained within legal bounds. This court disagrees that the surveillance videotape is sufficiently clear to compel such a conclusion.

As detailed above, the surveillance videotape does not show what occurred during the few seconds when the parties were inside the bathroom. While all parties agree that punches were thrown in the few seconds Cutts and Jones were together in the bathroom, this court cannot determine who was the aggressor. Thus, even accepting the defendants' claim that Jones remains visible throughout the tape, it is for the jury to determine

whether Jones threw Cutts against the bathroom wall and punched Cutts, or whether

Cutts faced Jones and punched Jones in the face first.[10]

Similarly, the tape does not establish whether Cutts was engaged in aggressive

behavior when he pushed Jones out of the bathroom and continued the fight in the hall, or

whether he was acting out of a fear of further attack and in an effort to defend himself

against unprovoked conduct of the defendants.   A jury will also need to evaluate whether

Jones and Malboeuf acted reasonably in response to Cutts' actions, or whether their use

of force was unnecessarily severe, and manifested an intent to cause harm to the plaintiff.

The events which took place inside the bathroom are critical to a determination whether

the defendants' actions were wanton and unnecessary or constituted a good faith effort to

restore order.   Therefore, the record presented on summary judgment, including the

surveillance videotape, raises questions of fact that should be determined by a jury.[11]

Finally, the defendants argue that they were entitled to use force pursuant to the

DOC's regulation governing the use of force by corrections staff, and that they cannot be

held liable for excessive force unless the plaintiff is able to overcome that privilege by

showing that they used force for an impermissible purpose.   (Def. Mem. at 10-12).

---

[10] There is no information in the record about the configuration of the bathroom.  In addition, even though the time in the bathroom was short, all parties agree that it was sufficiently long for someone to inflict physical injuries on the other.

[11] Based on the record presented on summary judgment, Cutts' injuries as a result of the incident were de minimis.  While this fact supports the defendant officers' position that they did not use excessive force, it is not dispositive.  See Hudson, 503 U.S. at 7, 112 S. Ct. at 999 ("The absence of serious injury is ... relevant to the Eighth Amendment inquiry, but does not end it").

Pursuant to 103 C.M.R. § 505.07, a "correctional officer [has] discretion to use force to the extent necessary to maintain order and discipline within the correctional institution[.]" Foster v. McGrail, 844 F. Supp. 16, 23 (D. Mass. 1994). For example, but without limitation, the regulation allows correctional officers to use reasonable force when it is necessary to "defend himself/herself or another against a physical assault;" "prevent or control a riot or disturbance;" "preserve the overall order and security of the institution;" and "preserve the safety of any employee, inmate, or visitor." 103 C.M.R. § 505.07(2). However, the regulation does not authorize DOC personnel to engage in an unnecessary attack on an inmate for the purpose of causing him harm. Therefore, assuming Cutts' version of the facts is true, the defendants have not shown that the use of force regulation justified their actions.[12]

### Remaining Claims Against Jones and Malboeuf

The defendants have not raised specific arguments regarding Cutts' claims against Jones and Malboeuf for negligence and intentional infliction of emotional distress. Instead, they contend that because Jones' and Malboeuf's conduct was lawful under the Constitution and Massachusetts law on assault and battery, Cutts' remaining claims against them cannot survive summary judgment. (See Def. Mem. at 14). As detailed above, the defendants have not established that Jones and Malboeuf are entitled to

---

[12] The defendants argue that because they had authority to use reasonable force under the circumstances pursuant to 103 C.M.R. § 505.07, they had no duty to retreat. (Def. Mem. at 12-14). Because the defendants have not shown that their force was justified as a matter of law, their argument that they had no duty to retreat is irrelevant.

judgment as a matter of law with respect to the excessive force or assault and battery

claims. Accordingly, they have not shown that their motion should be allowed with

respect to Cutts' remaining claims against those defendants.

**D.    Qualified and Common Law Immunity**

The defendants contend that they are entitled to qualified immunity with respect to

Cutts' excessive force claims, and to common law immunity with respect to his state law

claims. This court finds that there are disputed issues of fact which preclude summary

judgment for Jones and Malboeuf[13] based on the defense of immunity.

**Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" Pearson v.

Callahan, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald,

457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). "Qualified

immunity balances two important interests – the need to hold public officials accountable

when they exercise power irresponsibly and the need to shield officials from harassment,

distraction, and liability when they perform their duties reasonably. The protection of

---

[13] Because this court recommends that the motion for summary judgment be allowed as to Dennehy, Russo and Williams on the grounds that the plaintiff has failed to present any evidence to support his claims against them, it is unnecessary to determine whether those defendants are entitled to qualified immunity. Accordingly, this court has confined its immunity analysis to the claims against Jones and Malboeuf.

qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (quotations and citations omitted).

The determination whether an official is entitled to qualified immunity requires an assessment as to whether the facts alleged or shown by the plaintiff "make out a violation of a constitutional right" and, if so, "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. at 815-16 (quotations and citations omitted). "[T]he second, 'clearly established,' step of the qualified immunity analysis . . . in turn, has two aspects." Maldonado v. Fontanes, 568 F.3d 263, 269 (1ˢᵗ Cir. 2009). As the First Circuit has described:

> One aspect of the analysis focuses on the clarity of the law at the time of the alleged civil rights violation. To overcome qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights. Indeed, it is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

Id. (quotations, citations and alterations omitted). Thus, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (quotations, citations and alterations omitted).

In support of their qualified immunity defense, the defendants argue that the actions of Jones and Malboeuf were reasonable under the circumstances because they were authorized to use force pursuant to the use of force regulation, "and in response to plaintiff's objectively aggressive behavior[.]" (Def. Mem. at 15-16). However, as detailed above, there is evidence from which a factfinder may conclude that Jones and Malboeuf acted outside the scope of their privilege under the use of force regulation for the purpose of harming the plaintiff. Consequently, a question of fact exists as to whether it would have been clear to a reasonable officer in Jones' and Malboeuf's position that his conduct was unlawful under the circumstances, and the defendants have not shown that the officers are entitled to qualified immunity.

### Common Law Immunity

Similarly, the defendants have not shown that Jones and Malboeuf are entitled to common law immunity as a matter of law with respect to Cutts' state court claims. Under Massachusetts law, public officials "are not liable for negligence or other error in the making of a discretionary decision within the scope of their authority, so long as they act 'in good faith, without malice and without corruption.'" Cachopa v. Town of Stoughton, 72 Mass. App. Ct. 657, 665, 893 N.E. 2d 407, 414 (2008) (quoting Gildea v. Ellershaw, 363 Mass. 800, 820, 298 N.E. 2d 847, 859 (1973)). "A showing that the defendants acted with actual malice would thus also defeat their claim of [common law] immunity." Id. As set forth above, the record contains "evidence 'from which a jury could infer that [Jones and Malboeuf] acted in bad faith or with malice,' and consequently are not

-24-

shielded from liability." Id. (quoting Nelson v. Salem State Coll., 446 Mass. 525, 538, 845 N.E. 2d 338, 349 (2006)). Thus, this court recommends that their motion for summary judgment on the grounds qualified and common law immunity be denied.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the defendants' "Motion for Summary Judgment" (Docket No. 42) be ALLOWED IN PART and DENIED IN PART.  Specifically, this court recommends that the motion be allowed with respect to defendants Dennehy, Russo and Williams, but denied with respect to defendants Jones and Malboeuf.[14]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[14]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).